**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Criminal Action No. 07-655 (PGS) |
| v. : | |
| : | |
| TROY LEAKE : | **MEMORANDUM AND ORDER** |

Defendant comes before the Court on a motion to suppress evidence and dismiss the indictment against him based upon violations of his Fourth Amendment right to be free from unreasonable searches and seizures. Defendant argues that there was no constitutional basis for police officers to stop and detain him, and thus, that any evidence seized during that stop was obtained unlawfully.

### STATEMENT OF FACTS

Testimony and evidence adduced at a hearing held on November 17, 2008, provided the following facts. Shortly after midnight on April 5, 2007, Sergeant Thomas Ruane and Officer David Golpe of the Newark Police Department were on patrol as part of the department's Anti-Crime Unit. (T6:1-3; T6:21-24). While driving on Sussex Avenue in Newark, the officers observed a black male, later identified as Defendant, Troy Leake, walking on Sussex Avenue in the direction of the police vehicle with his right hand positioned on his right hip and holding an unknown item. (T7:6-18). When the officers saw Defendant walking down the street, they planned to challenge him– that is, ask the Defendant what was going on and why he was walking in that area. (T63:3-64:1). As the patrol car came closer to Defendant, the officers observed the handle of a silver gun on Defendant's

right hip. (T11:12-16; T61:11-12). At some point during the approach, the gun was in Defendant's right hand. (T7:16-17). The officers stopped the vehicle and ordered Defendant to drop the gun. (T7:17-18). Defendant responded that he didn't have a gun, as he put the firearm into his right jacket pocket. (T12:5-6; T62:6-7; T64:3-4).

Golpe immediately exited the vehicle and pursued Defendant to 61 North 5th Street while Ruane gave chase in the vehicle. (T12:8-14; T64:9-13). After a few moments, it became apparent that Defendant was intoxicated, and Ruane exited the vehicle to pursue Defendant on foot as well. (T12:16 to 13:2). When Defendant reached 61 North 5th Street, he fell on the sidewalk and dropped the silver revolver. (T13:4-5; T64:9-13). Golpe covered the Defendant with his weapon while Ruane ordered Defendant to present his hands so Ruane could handcuff him. (T14:2-12; T68:9-16). Defendant refused to comply with this request. (T14:2-12). Ruane rolled the Defendant over, at which time he observed another revolver in Defendant's waistband. (T14:19). As Defendant reached for the weapon, Ruane shouted "[d]on't do it," and punched Defendant in the left side of the head. (T14:22-15:2; Police Report at 1). Ruane then handcuffed the Defendant. (T15:11).

The officers recovered a .38 caliber silver Smith & Wesson revolver loaded with five ball tipped bullets, as well as a .357 caliber Ruger pistol with a defaced serial number that was loaded with three ball tipped and two hollow point bullets. (T15:14-17:18; *see also* Police Report at 2). Defendant was intoxicated at the time of his arrest. (Police Report at 2). While on route to the police station, Defendant, who had not yet been issued his *Miranda*[1] warnings, gave a statement to police that, in essence, someone had disrespected a member of Defendant's family, and that Defendant had planned to threaten that individual with the firearms. (Robertson Letter, Nov. 13, 2008).

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

**PROCEDURAL HISTORY**

The Federal Grand Jury returned a one-count Indictment against Defendant, filed on August 6, 2007, which charged Defendant with possession of a weapon by a felon, 18 U.S.C. § 922 (g)(1). Thereafter, on September 7, 2007, this Court entered an Order for Discovery and Inspection, delineating the materials to be disclosed by the Government to the Defendant, and stating that the Government was under a continuing obligation to turn over materials covered by the Order should they be received by the Government at some later point. (Order at 3). On March 7, 2008, Defendant filed an omnibus motion, including this motion to suppress and dismiss the indictment. An evidentiary hearing on that motion was held on November 17, 2008.

**DISCUSSION**

**I. Motion to Suppress the Firearms and Dismiss the Indictment Against Defendant**

Defendant brings this motion to suppress the firearm evidence and dismiss the indictment against him because he alleges an illegal search and seizure. Defendant states that he was improperly stopped because no weapon would have been visible to police when they stopped him. Therefore, Defendant claims that the officers had no constitutional basis upon which to perform even a short, investigatory stop, let alone probable cause.

"A defendant may move to suppress evidence in the court where the trial will occur, as Rule 12 provides." Fed R. Crim. P. 41(h). Motions to suppress evidence must be made prior to trial. Fed. R. Crim. P. 12 (b)(3)(C). A defendant who files a motion to suppress ordinarily carries the burden of proof. *United States v. Acosta*, 965 F.2d 1248, 1257 n.9 (3d Cir. 1992) (citing *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978)). "However, once the defendant has established a basis for his motion, *i.e.*, the search or seizure was conducted without a warrant, the burden shifts to the government to show that the search or seizure was reasonable." *United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995)). Therefore, for a warrantless search or seizure, the Government must establish by a

preponderance of the evidence that any action taken by its agents fall within the bounds of the Constitution. *United States v. Matlock*, 415 U.S. 164, 178 n.14 (1974).

The Fourth Amendment guarantee against unreasonable searches and seizures is not one with which the Court may easily dispense. Because of the interests at stake, it becomes necessary "'to focus upon the governmental interest which allegedly justifies official intrusion upon the constitutionally protected interests of the private citizen,' for there is 'no ready test for determining reasonableness other than by balancing the need to search [or seize] against the invasion which the search [or seizure] entails.'" *Terry v. Ohio*, 392 U.S. 1, 20-21 (1968) (quoting *Camara v. Municipal Court*, 387 U.S. 523, 534-35, 536-37 (1967)) (alterations in original).

Further, a seizure only occurs "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen . . . ." *Id.* at 19 n.16. "More recently, the Court has held that 'a person has been seized within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave . . . .'" *United States v. Coggins*, 986 F.2d 651, 653 (3d Cir. 1993) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)). Therefore, "[p]olice officers do not violate the Fourth Amendment merely by approaching an individual in a public place and asking if he is willing to answer questions." *Id.* at 654.

This is not a license for police to stop whomever they wish, however. To perform more than a field inquiry, something rising to the level of an investigative stop, "[t]he officer . . . must be able to articulate something more than an 'inchoate and unparticularized suspicion or hunch.'" *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry*, 392 U.S. at 27). The articulable suspicion must rise to the minimal level of an objective justification for the stop, but "[t]hat level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence." *Id.* This review is based upon the totality of the circumstances, taking into account the specific facts articulated by law enforcement "which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21.

Because of the danger to law enforcement officers inherent in their duty to protect and serve,

under certain circumstances, it is appropriate under the exception carved out in Terry to conduct a limited, protective search for weapons on an individual, coupled with a temporary detention of that person for that purpose. *See id.* at 27. An officer is allowed to conduct such a search if he or she has a reasonable and articulable suspicion that criminal activity is afoot, and that a suspect may be armed. The Supreme Court has held that such a suspicion exists when

> he [or she] has reason to believe that he [or she] is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent [person] in the circumstances would be warranted in the belief that his [or her] safety or that of others was in danger. *Id.*

Here, Defendant states in a sworn affidavit that he did not have the silver revolver in his hand when he walked up Sussex Avenue. Thus, Defendant asserts, there was no reason for the police to stop him, search him, or chase him. The Government, in response, asserts that the revolver was in plain view. Thus, the police had more than a reasonable and articulable suspicion that a crime was being committed they had probable cause to arrest Defendant. The Government's argument as to the weapon being in plain view prevails.

Defendant argues that the discrepancies between the accounts of Ruane and Golpe with reference to the events leading up to the stop indicate that neither witness is particularly credible. "The court, as finder of fact, is free to accept or reject any or all of a witness's testimony." *United States v. Murphy*, 402 F. Supp. 2d 561, 569 (W.D. Pa. 2005) (citing *United States v. Conley*, 859 F. Supp. 830 (W.D. Pa. 1994)). Determinations of witness credibility depend on many factors, "including the witness's demeanor and manner while on the stand, the witness's ability to accurately recollect the matters at hand, the manner in which the witness may be affected by the outcome, the extent to which the witness's testimony is either supported or contradicted by other evidence and testimony in the case, and, ultimately, the extent to which it withstands a common sense test of reason and logic." *Id.* Furthermore, "the testimony of a witness is not to be judged more or less credible because the witness is a law enforcement officer." *Id.* (citing *United States v. Bethancourt*,

65 F.3d 1074, 1080 (3d Cir. 1995) and *Conley*, 859 F.Supp. at 840). Here, the discrepancies include Ruane remembering the officers speaking to each other about the gun prior to pulling over, but Golpe not remembering such a conversation; Golpe remembering that Defendant was wearing a green mitten on his right hand while Ruane remembered no such article of clothing; and Golpe recalling that the officers were in uniform in a marked vehicle, while Ruane stated that the officers were in plain clothes in a marked vehicle. None of these minor discrepancies makes either witness less than credible in the eyes of this Court. These discrepancies have little bearing, if any, on the ultimate facts adduced at the hearing: that the officers were on patrol when they noticed Defendant walking alone at midnight; that upon approaching the Defendant, the officers saw a gun on Defendant's right hip; and that Defendant, when stopped, refused to drop the weapon and instead ran until he fell and was ultimately apprehended by Ruane.

Defendant likewise asserts that the admission by Golpe that the officers planned to "challenge" Defendant because he was walking alone at midnight in Newark shows some kind of unconstitutionally prejudicial motive underlying the officers' actions. However, it is part of the community caretaking function of the police to make such inquiries. Defendant was free not to answer any questions asked of him during such a field inquiry or "challenge." Once the officers approached and saw the firearm in Defendant's hand, they had, at the very least, a reasonable and articulable suspicion sufficient to perform a *Terry* stop. For that reason, this Court does not reach the issue of probable cause for Defendant's detainment and arrest.

The motion to suppress the evidence and to dismiss the indictment is therefore denied.

**ORDER**

For the foregoing reasons, it is, on this __23__ day of January, 2009,

**ORDERED**, that Defendant's motion to suppress evidence and dismiss the indictment is denied.

_____
PETER G. SHERIDAN, U.S.D.J.